[Civ. No. 19927. Second Dist., Div. Three. Mar. 15, 1954.]

Estate of ELIZABETH C. SMITH. Deceased. ETHEL M. SMITH, as Administratrix, etc., Appellant, v. WILLIAM HICKS, as Administrator, etc., et al., Respondents.

Henry O. Wackerbarth for Appellant.

Clarence A. Singer for Respondents.

VALLÉE, J.—Appeal from an order of the probate court settling accounts and allowing commissions and fees.

Elizabeth C. Smith died testate on December 16, 1947. Her will was admitted to probate; and Dessie D. Johnston, named therein, was appointed executrix. Dessie died testate on August 18, 1949. On September 21, 1949, Emilie Choate, a daughter of Dessie, was appointed administratrix with the will annexed of the estate of Elizabeth Smith. On December 14, 1949, Emilie was removed as such administratrix. On January 9, 1950, Ethel M. Smith, another daughter of Dessie, was appointed administratrix with the will annexed. Ethel converted all of the assets into cash, excepting those specifically bequeathed. On May 28, 1952, she filed a final account, report and petition for distribution.

Dessie's will was admitted to probate and William Hicks was appointed administrator-with-the-will-annexed. On December 10, 1951, Hicks, on behalf of Dessie, deceased, filed in the estate of Smith a first and final account. On May 28, 1952, Ethel, as representative of the estate of Smith, filed objections to the account, claiming that Hicks had failed to account for moneys collected by Dessie as executrix and appropriated by her to her personal use.

The account filed by Ethel and that filed by Hicks were heard together. The court sustained some of the objections made by Ethel to the account filed by Hicks and ordered that that account be surcharged in the amount of $2,031.19. This amount was made up of $1,556.19, money of the estate of Smith that Dessie had collected and used for her own benefit and not for the estate, and $475, money of that estate which Dessie had collected, for which Hicks had not accounted. The court allowed $686.06 for services rendered by Dessie as executrix of the estate of Smith.

On July 21, 1952, the court, by minute order, ordered the $686.06 set off against the $2,031.19. On December 30, 1952, the minute order of July 21, 1952, was corrected to provide

that the $686.06 be paid to the estate of Johnston, and that it not be set off against the $2,031.19. Findings of fact and a formal order were thereafter made in which the court adjudged that the "$686.06 shall not be offset against, or deducted from, the sum of $2,031.19 which the Court has heretofore found to be due to the Estate of Elizabeth C. Smith, deceased, from the Estate of Dessie D. Johnston, deceased," and that "$2031.19 is due and owing to Ethel M. Smith, as such Administratrix, from William Hicks, as Administrator of the Estate of Dessie D. Johnston, deceased, and William Hicks, as such Administrator, is hereby ordered to pay said sum to Ethel M. Smith, as such Administratrix, in the due course of administration of the Estate of Dessie D. Johnston, deceased." The order also settled the account of Ethel, the account of Hicks, allowed commissions and fees, and distributed the estate of Elizabeth C. Smith. Ethel, as representative of the estate of Smith and individually as a legatee, appealed from the entire order; however, her attack is directed only to that part of the order which adjudges that the $686.06 shall not be set off against the $2,031.19.

Appellant claims that the estate of Johnston is insolvent, which respondent concedes; that the probate court is vested with equitable jurisdiction; that the right of equitable setoff applies where one of the parties is insolvent; and that, irrespective of the fact of insolvency, the court should have set off the commissions against the indebtedness of the estate of Johnston. We have concluded that appellant's contentions are well taken.

If any person embezzles the property of a decedent, he is chargeable therewith. (Prob. Code, § 612.) If an executor or administrator dies, his accounts may be presented by his personal representative to, and settled by, the court in which the estate of which he was executor or administrator is being administered; and upon petition of the successor of such deceased executor or administrator, such court shall compel the personal representative of the deceased executor or administrator to render an account of the administration of his testator or intestate, and must settle such account. (Prob. Code, § 932.) ■ Section 932 provides the exclusive procedure instead of a suit in equity. (*Estate of Clary,* 203 Cal. 335, 338 [264 P. 242].) ■ The filing of a claim is not a prerequisite to the institution of a proceeding under section 932. (*Estate of Clary, supra,* 344-345.)

■ A probate court, in determining issues arising in connection with the administration of an estate, may bring to its aid the full equitable powers with which, as the superior court, it is invested. (*Estate of Baldwin*, 21 Cal.2d 586, 594 [134 P.2d 259].)

Section 440 of the Code of Civil Procedure provides: "When cross-demands have existed between persons under such circumstances that, if one had brought an action against the other, a counterclaim could have been set up, the two demands shall be deemed compensated so far as they equal each other, and neither can be deprived of the benefit thereof by the assignment or death of the other."

■ The right of setoff is based on the equitable principle that no one shall be permitted to share in the distribution of a fund until he has discharged his obligation to contribute to the fund. (21 Am.Jur. 635, § 452.) ■ The right may be asserted against any known or ascertainable indebtedness that is due an estate, regardless of whether it was incurred before or after the decedent's death. (21 Am.Jur. 636, § 455.)

■ The debits and credits of a mutual account constitute cross-demands which are deemed to compensate each other. (*Hart* v. *Cooper*, 47 Cal. 77; *Jones* v. *Mortimer*, 28 Cal.2d 627 [170 P.2d 893].) ■ The insolvency of a party against whom a setoff is claimed constitutes a sufficient ground for the allowance of a setoff not otherwise available. (*Downey* v. *Humphreys*, 102 Cal.App.2d 323, 336 [227 P.2d 484].)

■ An administrator occupies no better position than that which was occupied by the party for whom he accounts. (See *Downey* v. *Humphreys, supra,* 336.)

■ "[A] court of equity will compel a set-off when mutual demands are held under such circumstances that one of them should be applied against the other and only the balance recovered. ■ The insolvency of the party against whom the relief is sought affords sufficient ground for invoking this equitable principle." (*Harrison* v. *Adams,* 20 Cal.2d 646, 648 [128 P.2d 9], and cases there cited; 31 Cal.L.Rev. 212.)

In *Estate of Gamble,* 166 Cal. 253 [135 P. 970], it was held that the probate court properly set off a judgment which the personal representative had obtained on the estate's behalf against a legacy in favor of the judgment debtor, since the two claims were cross-demands on the principle stated in section 440 of the Code of Civil Procedure. *People* v. *California etc. Trust Co.,* 168 Cal. 241 [141 P. 1181, L.R.A. 1918A 299], holds that the rule of mutuality as to setoff is not con-

trolling in actions by or against personal representatives of an estate involving its assets, but will be departed from in cases where the setoff cannot in any respect embarrass the administration of the estate or prejudice the rights of any other party interested in its assets.

 The rule in this state is that a representative shall be charged with losses resulting from his default or neglect and shall be allowed his commissions. This will be done so that, so far as necessary, commissions will be applied to the payment of such losses. (*Estate of Roberts,* 27 Cal.2d 70, 76 [162 P.2d 461]; 11B Cal.Jur. 456, § 1021.) In *Matter of the Estate of Isaacs,* 30 Cal. 105, the executors had paid interest on a claim in excess of the rate provided by law. It was held they were liable for the excessive interest paid and the probate court had properly deducted the amount from their commissions. In *Estate of Clary,* 203 Cal. 335 [264 P. 242], the court stated (p. 346) : "In the instant case, the executor, C. M. Clary, deceased, had earned a portion of his commission as an executor, which was due him from the estate. As Clary could not sue himself and as it was 'his duty to collect the debt for the estate, he must be held officially liable for any money he could have so applied at any time during his official term. If he has not so applied it, he has not faithfully executed the duties of his trust according to law. . . .' (*Estate of Walker, supra* [125 Cal. 242 (57 P. 991, 73 Am.St.Rep. 40)].) It was C. M. Clary's duty to report his indebtedness to the probate court and to have paid it, if it was possible for him to have done so. The commissions earned by him could and should have been applied to his indebtedness. The fact that he died pending the administration of the estate did not affect the situation in any sense." In *Estate of Fulmer,* 203 Cal. 693 [265 P. 920, 53 A.L.R. 430], it is said (p. 702) : "[T]he court should, and must, allow to the appellant the commissions due him as administrator, for the statute contemplates that the amount of such commissions is to be ascertained when the final account is rendered. (*Estate of Miner,* 46 Cal. 564, 572.) Under our decisions, an administrator, while chargeable with losses resulting from his default or neglect is, nevertheless, allowed his commissions. (*Estate of Carver,* 123 Cal. 102, 105 [55 Pac. 770].) *The one should be balanced against the other.* (11 Cal.Jur. 1158, sec. 763, and authorities there cited.)" (Italics added.)

In *Re Jackson Estate,* 200 Wash. 116 [93 P.2d 349, 123

A.L.R. 1281], the trial court set off the amount of an executor's commissions against his indebtedness to the estate even though he had assigned his right to the commissions to a third person. In affirming the order, it was held (123 A.L.R. 1283, 1284): "The principal question is whether the court had the right to provide that Nilsen's fees as executor should be applied upon the indebtedness which he owed the estate. . . . [T]he rule of retainer is equitable in its nature and based upon the principle that one should not be permitted to share in the distribution of a fund until he has discharged his obligation to contribute to that fund. If the fees of the executor are not applied upon his indebtedness to the estate, then they will go to Knudsen under the assignment. It would seem to be inequitable to take these fees out of the estate, while Nilsen is indebted to it in a greater sum than the amount thereof, and give them to a third person." (See also *Burbank's Adm'x* v. *Duncan,* 21 Ky.L.Rep. 826 [53 S.W. 19]; *In re Kraeuter's Estate,* 125 N.J.Eq. 120 [4 A.2d 383].)

The estate of Johnston is indebted to the estate of Smith in the amount of $2,031.19, moneys of the estate of Smith which Dessie Johnston, while acting as executrix of the will of Smith, converted to her own use. Dessie Johnston, as executrix of the will, earned commissions of $686.06. The estate of Johnston is insolvent and cannot pay the $2,031.19 to the estate of Smith. If the $686.06 commissions is not set off against the indebtedness of $2,031.19, the $686.06 will be paid by the estate of Smith to the estate of Johnston, and the latter estate will be unjustly enriched in that amount. On the other hand, if the commissions are set off against the indebtedness, the estate of Smith will be reimbursed to the extent of $686.06. Applying the principles of law, to which we have referred, we cannot escape the conclusion that the commissions should have been set off against the indebtedness. The commissions and the indebtedness constitute cross-demands and the commissions should be applied to the payment of the indebtedness. If Dessie Johnston were alive, there could be no question but that a setoff would be ordered. As said in *Estate of Clary, supra,* 203 Cal. 335, 347, the fact that she died pending administration of the estate did not affect the situation in any sense.

In support of the order, respondent Hicks argues that the $686.06 was properly ordered paid to the estate of Dessie Johnston without setting it off against her indebtedness to the estate of Smith in order to afford him an opportunity to be com-

pensated for his services in administering the estate of Johnston. He also argues that to set off the commissions against the indebtedness would give appellant a preference and priority in contravention of section 950 of the Probate Code,[1] and would deprive the estate and the United States of any inheritance and estate taxes that may be due.

 Respondent is administrator of the estate of Johnston, not of the estate of Smith. The probate of the estate of Smith and that of the estate of Johnston are two separate and distinct proceedings. The $686.06 was allowed for the services of Dessie Johnston, as executrix of the will of Elizabeth Smith, and not for the services of Hicks. Respondent, as administrator of the estate of Johnston, has no right to look to the estate of Smith for his commissions.

 The proceeding by which Ethel sought to have the account of Hicks surcharged in the amount of the losses caused by Dessie Johnston was, in effect, an action in conversion to recover possession of assets. (11B Cal.Jur. 312, § 896; 33 C.J.S. 1252, § 244; 21 Am.Jur. p. 557, § 310, p. 879, §§ 904, 906, p. 827, § 794.) An assertion of a right to property adverse to an estate is not a claim in the sense used in the statute, and a person asserting such right is not a creditor of the estate. (*Estate of Cutting,* 174 Cal. 104, 108 [161 P. 1137]; *Tanner* v. *Best,* 40 Cal.App.2d 442, 445-446 [104 P.2d 1084]; *Erickson* v. *Boothe,* 79 Cal.App.2d 266, 277 [179 P.2d 611]. See also *Hutchinson* v. *Lamb,*

---

[1]Section 950 of the Probate Code reads: "The debts of the decedent, the expenses of administration and the charges against the estate must be paid in the following order:

"(1) Expenses of administration;

"(2) Funeral expenses;

"(3) Expenses of last illness;

"(4) Family allowance;

"(5) Debts having preference by the laws of the United States;

"(6) Wages, to the extent of six hundred dollars ($600), of each employee of the decedent, for work done or personal services rendered within 90 days prior to the death of the employer. If there is not sufficient money with which to pay all such labor claims in full the money available must be distributed among the claimants in accordance with the amount of their respective claims;

"(7) Mortgages and other liens, in the order of their priority, so far as they may be paid out of the proceeds of the encumbered property. If such proceeds are insufficient for that purpose, the part of the debt remaining unsatisfied must be classed with general demands against the estate;

"(8) Judgments rendered against the decedent in his lifetime, in the order of their date;

"(9) All other demands against the estate."

Brayt. (Vt.) 234-235. *Cf. Newport* v. *Hatton,* 195 Cal. 132, 150-151 [231 P. 987].) The $2,031.19 is not an asset of the estate of Johnston. It is an asset of the estate of Smith, in the possession of Hicks as administrator of the estate of Johnston, although valueless except to the extent of the commissions allowed for the services of Dessie Johnston, as executrix. Since it is not an asset of the estate of Johnston, it is not available for the payment of inheritance or estate taxes, assuming there are such, that may be due from that estate. The estate of Smith is not a creditor of the estate of Johnston, and section 950 of the Probate Code providing the order in which debts of a decedent, expenses of administration, and charges against an estate shall be paid, has no application.

We hold that the commissions of $686.06 should have been set off against the $2,031.19 converted by Dessie Johnston to her own use.

The order, insofar as it adjudges that the commissions allowed for the services of Dessie Johnston, as executrix, not be set off against the moneys converted by her to her own use, is reversed, with directions to the superior court, sitting in probate, to amend its order in conformity with the views we have expressed. In all other respects, it is affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.